And we have our Appellant's Counsel, Mr. Tuck, by video. Can you hear us? I can, thank you, Your Honor. Excellent. Go ahead. Yes, if the Court pleases, Matthew, I'll talk appearing on behalf of the defendant appellant, in this case, Jerron Harris. And I would like to reserve two minutes for rebuttal, if I could. And I know the Court is well familiar with the facts and the law in this case. So I won't belabor those points for the Court. But as was brought out in the companion case, there is a significant issue here, a significant constitutional issue. Can I interrupt you? There's a point that I want to get your take on. Yes. Your opposing counsel says that Godoy doesn't apply because the Supreme Court distinguishes between jury tampering and jury bias. What is your response to that? I think they're both of a piece, Your Honor. I think it's very much the same thing. And it's maybe a distinction without a difference, is the way to put it. But we do have to, under AEDPA, we do have to make sure it's clearly established violation. So what in the Supreme Court law tells us that there's no distinction there that makes that clear? Well, I think that that has not really been addressed by the Court. But the effect is the same when you think about it. If a juror is being tampered with and that juror therefore becomes biased, that taints the jury deliberations just as a secret, almost in this case a secret spy in the jury. Well, even if we were to agree with you, and frankly I am inclined to agree with you, I don't understand why we would treat jury bias sort of less significantly than jury tampering. But nonetheless, under AEDPA, that has to be clearly established. I agree. And I think in this case that it's certainly a significant constitutional right. And the problem in this case, as Your Honor's pointed out in the prior argument, is that there was not a proper hearing conducted by the trial court in this case. Why does counsel request a hearing? Well, I think that—and I was not the trial counsel in this case. I understand that. It seems to me he specifically said it wasn't necessary. That I don't recall. I know that a hearing was requested, and I think the characterization is that it was sort of a hearing, whether they have a hearing or not. And, you know, it seemed like any time some kind of an allegation like this is made, an evidentiary hearing with witnesses is actually required, where one or more likely all of the jurors would need to be questioned about what they heard, what went on in the deliberations. And in this case, unfortunately, the record is limited. There's only really two jury declarations. There's the one by Juror No. 5, who was the problem juror, and Juror No. 7, who overheard certain statements. Juror No. 5 minimized those statements. She adopted some of them but didn't adopt all of them, which, again, you know, just throws up more factual issues here that really needed to be resolved in an evidentiary hearing, I think. And that, for whatever reason, was just not done. So let me ask the question I asked in the prior case. Yes. So what Supreme Court case should the California Court of Appeal looked at in order to understand that the kind of hearing that was held here was inadequate? It was not that there was a failure to hold a hearing. It was that your contention is that the hearing was inadequate. So what case do we look to the Supreme Court to tell us that? That's a good question. I don't know that there is a specific case on particularly juror bias that gives that guidance yet. Maybe this one will be the case. I don't know. But it seems to me that just the fundamental fairness of it requires that when you look at all of the other case law, for instance, that it really needs to be more of a substantive inquiry than the cursory one that was done here. So what do you think is the best Supreme Court case for your – what's the case that you would like me to focus on? Good question. I suspect that – make sure I get this right. I think the Godoy case – I think I'm saying that right. That – I think that – Godoy? Yeah. Godoy is one of our cases. Do you have a Supreme Court case? I don't have a Supreme Court case that addresses this particular issue. I can certainly submit a supplemental brief to the court. That's okay. But I'm not aware of one. I did not locate one that was on point in my research. Okay. Do you want to save your remaining time for rebuttal? Yes, I would, if the court has no more questions. And we would just ask that this court reverse the case and grant the habeas petition. May it please the court. Jonathan Klein, Deputy Attorney General for Respondent. Kind of feels like deja vu being up here again. So the Godoy case was mentioned again. And we really are constrained by what the law is. I cited to Tracy the palmeteer in the earlier argument, and it's pretty clear where it says, Remmer's command that hearings are warranted in every case is unique to the tampering context where the potential effect on the jury is severe. And I would also cite to another case, Sims v. Rowland, which says Remmer provides little perspective guidance as to when a hearing is required or even appropriate. And if we look at Godoy, it is explicitly based on Remmer and Maddox. And in those cases, there was a kind of a strict command for an evidentiary hearing in the jury tampering context. There was also this presumption and burden shifting framework that it established. What was the fact pattern in Smith? I'm trying to remember. Was it a jury tampering fact pattern? You're talking about Smith v. Phillips? Yes. In that case, that was where a juror applied for a job at the DA's office during trial. So that's fairly analogous to this. I mean, not exactly the same, but it's not a tampering situation. It's a bias situation like what we have. And in that case, again, the quote that I read before says, this court has long held that the remedy for allegations of juror partiality is a hearing. So I keep coming back to why is there two strains, two paths here? Why do you think that there's two paths here? Because right after the quote that I just read out of Smith, it talks about Remmer. It seems like it's not limiting Remmer to just that context that you're arguing. Your Honor brings up a very good question, but that is the state of the law. But Smith is part of the state of the law, and you seem to be arguing around it. Well, I will address it directly in what this court has said. Again, in Tracy v. Palmatier, it says, Remmer and Smith, referring to Smith v. Phillips, do not stand for the proposition that any time evidence of juror bias comes to light, due process requires the trial court to question the jurors alleged to have bias. Neither case mandates a hearing whenever evidence of juror bias is raised. Right, which is why in the first case, I started out by asking, at what point in the analysis is the requirement for a hearing triggered? It's not going to be every single time there's a whiff of jury bias or jury tampering. There's got to be something there. Where is it? What is the standard that triggers the hearing requirement? Your Honor, I would go back to what this court said in Hibler v. Beneditti, where it said a state court's decision not to hold an evidentiary hearing does not render its fact-finding process unreasonable, so long as the state court could have reasonably concluded that the evidence already adduced was sufficient to resolve the factual question. So I think that's the analysis we're under. Was the evidence adduced at this type of hearing that the court held sufficient to resolve the factual question? And for the reasons I set forth in the preceding argument, I think the answer to that is yes. We have the case-neutral explanation for why she omitted the information. More importantly, we have evidence of how she evaluated the evidence in this case quite fairly, in that she rejected the testimony of a very key prosecution witness, and she urged other jurors to reject it. She then acquitted one of the defendants of three counts and found the gang allegation not true as to him. That type of behavior just does not make any sense for someone who is biased against the defendants because they were gang members. So from what the court had before it, it could resolve the factual question as to whether the juror was biased. And one thing I neglected to bring up in the preceding argument, there is a little bit of a procedural issue. There are two claims floating around here. One is the substantive juror bias claim, and the other one is this procedural claim that we've been talking about, that there was a necessity to hold an evidentiary hearing. Those claims have been raised and resolved separately throughout this litigation. So Harris actually, the California Court of Appeal, found that he had forfeited that claim. So to the extent that he is raising a standalone claim that the failure to hold an evidentiary hearing was error, that claim has been procedurally defaulted. Have you ever raised that before? That was raised in district court. We argued procedural default, and Harris in his opening brief in this court did not talk about the procedural aspect. So we had no reason to reassert the procedural bar. He only focused on the substantive juror bias claim. And to be clear, the argument that I understand he and Counsel for Bishop are making is the one under D-2, that the fact-finding procedure from the state was defective. And I think that argument is fair game, and I've addressed it. But I do want to make clear that to the extent either of these petitioners is raising a standalone argument that the failure to hold an evidentiary hearing was constitutional error, in Harris's case, it's been procedurally defaulted. In Bishop's case, it was never raised in the California Court of Appeal, nor was it raised in district court. So it presents a myriad of procedural problems. But to reiterate, I understand that they are making the argument under D-2.  So I think I've covered everything that was in my notes. Unless the court has any further questions, a respondent would be asking for this court, respectfully asking for this court to affirm the judgment of the district court. Thank you, Counsel. Thank you. All right, you've got a couple minutes for rebuttal. Thank you, Your Honor. I did take to heart the court's comments that not every case probably warrants an evidentiary hearing, and I would agree with that. If this were a contract case, the lies that Juror 5 committed and the obfuscations and even some of the other machinations she did probably wouldn't make that much of a difference. It's probably not relevant that she lied about being on the gang unit, that she was a former dispatcher and dispatched probably hundreds of thousands of officers to gang-related shootings and things like that. The problem is this is a murder case and it was a gang case, so that becomes absolutely relevant. So the case law is pretty clear that, yes, we probably don't need an evidentiary hearing in every case, but when it directly impacts the issues that are before the court and being raised by the defense, I think the court has to have some kind of an evidentiary hearing and a meaningful one with witnesses and actual testimony, not just trial by affidavit, which is kind of what happened in this case, that the court was satisfied and then just sort of moved on. But I think something much more substantial is required, and we would ask that the district court be reversed. Counsel, I have one last question. Did you file for certiorari from the California procedures? Not at this point. Well, your time for filing is probably long gone, right? Yeah. You can file from cert from any decision we issue, but nobody's got certiorari from the California? Not at this point, Your Honor. All right. Thank you. I would like to focus your attention on what the California Court of Appeals said about basically your last, the argument before Judge Bybee's question, which is the California Court of Appeals did make the observation that your predecessor counsel had forfeited by not requesting an evidentiary hearing, but went on to say there's no basis in what's been argued to us by your predecessor to think an evidentiary hearing was necessary. It was willing to accept the proposition that she deliberately misstated or hid facts, which the court observed could have been drawn out with further voir dire, but said there wasn't a showing of what an evidentiary hearing would have produced. Now, we can speculate as to what discovery might have been obtained, but we're stuck with the state court record. What was incorrect or what was a clear violation of federal law in that statement? Well, the course point is well taken. I think that once the issue is raised, I think it triggers more of an inquiry than what was done here. And it's certainly when the alleged bias goes directly to the heart of the case. And when it's a capital crime case, this is a murder case that more of an inquiry needed to be made. And, you know, again, it was clear that this juror had lied. And how much she lied, I think, was what needed to be explored in the evidentiary hearing. And unfortunately, they just kind of sat on the bare record that was made, which was, I think, grossly inadequate in this case. And my client was certainly entitled to more of an inquiry there. And once this issue was raised, whether or not prior counsel, and I can't speak to his motivations or his strategy there, once that was raised, the court should have said, okay, we're going to move beyond this. We're going to do an actual hearing. And that just wasn't done because, I mean, it is a substantive right here. It's the right to a trial by jury, which was directly impacted and compromised here. All right, it doesn't look like there are any further questions. So thank you, counsel. The matter of, hold on, I don't have my sheet again. Harris versus the California Department of Corrections is submitted. We thank you for your argument. Thank you.
judges: CLIFTON, BYBEE, FORREST